**IN THE UNITED STATES DISTRICT COURT IN THE**
**EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION**

| | |
|---|---|
| **LAMONTA GLADNEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **TYLER RYAN TIMBERLAKE,** ) | CIVIL ACTION NO. |
| Fairfax County Police Department ) | |
| 4100 Chain Bridge Road ) | |
| Fairfax, VA 22030 ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

Plaintiff, Lamonta Gladney, (hereinafter "Gladney" or "Plaintiff"), by and through his undersigned counsel, complains and requests relief against Tyler Ryan Timberlake ("Timberlake"), who at all material times relevant to this action was and is a Fairfax County Police Officer. In support thereof Plaintiff avers as follows:

## PRELIMINARY STATEMENT

1.      On January 11, 2016, in *Armstrong v. The Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016), the United States Court of Appeals for the Fourth Circuit announced a bright line rule for police officers "that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." *Id*. at 903.

2.      The Fourth Circuit announced that law enforcement officers "should now be on notice" that such conduct violates the Fourth Amendment.

3.      The Fourth Circuit's holding in *Armstrong* is the law in the Commonwealth of Virginia, and Fairfax County and the Fairfax County Police Department are required to follow it.

4.     It is not optional.

5.     On June 4, 2020, Timberlake, a law enforcement officer from the Fairfax County Police Department, obliterated the bright line the Fourth Circuit established in *Armstrong* when he tased Lamonta Gladney in a Mt. Vernon residential neighborhood.

6.     On June 4, 2020 Gladney, who is African American and was unarmed, was trying to obtain assistance for a friend who Gladney thought needed oxygen and medical attention. Because his cell phone had no power Gladney went into the inactive residential street seeking help and encountered young boys on bicycles who agreed to contact an ambulance. Concerned about his friend who was afflicted with a medical condition and who had lost consciousness, Gladney was overcome with anxiety and panic which seemingly rendered him unable to comprehend and communicate.

7.     As shown on another officer's body-worn camera, Police, including Officer Schaefer, and Fairfax County Fire and Rescue Department paramedics encourage Gladney to get into an ambulance to be taken to a hospital, but Gladney, in his delirium, seems not to comprehend and continues to walk around aimlessly in the Mount Vernon neighborhood, requesting help.

8.     A person who appears to be a medic tells Gladney, "I'm here to help you, so tell me what you need." Gladney can be heard rambling incoherently and asking for oxygen. Gladney tells a Fairfax County Police Officer who is not Officer Timberlake his name and talks with this officer as the officer encourages Gladney to get into the ambulance. At no time does this officer attempt to arrest or detain Gladney, and he almost succeeds in persuading Gladney to get into the ambulance. Neither this officer nor the medics exhibit any fear of Gladney, who was shirtless and clearly unarmed, as they approach him seeking to engage him in conversation.

9.      Video from the body-worn camera shows that seconds after arriving on the scene, Timberlake, an eight-year veteran of the Fairfax County Police Department who is white, quickly advances toward Gladney and fires his TASER into Gladney as Gladney was turning away from him. At no time was Gladney threatening Timberlake by either word or gesture, nor was he attempting to evade him. Rather, Gladney was, in his apparent delirium, merely continuing to walk in circles. The instant before Timberlake fires his TASER, just as he can be seen pointing it at Gladney, the officer wearing the camera is heard asking Timberlake: "Is he wanted [for arrest]?"

10.     There was no outstanding warrant for Lamonta Gladney's arrest.

11.     Timberlake fires his TASER into Gladney and Gladney collapses, after which Timberlake strikes him in the head with his TASER and puts both his knees on Gladney's back and neck while firing his taser into Gladney's neck. Gladney is pinned to the ground offering no resistance. Several times Gladney yells "I can't breathe!" The officer wearing the body-worn camera had previously called Gladney by his first name, and that same officer covers the camera immediately after Timberlake strikes Gladney in the head with his TASER.

12.     Gladney was unarmed and not a threat to anyone when Timberlake shot him with his TASER and then proceeded to kneel on his back, slam his other knee into Gladney's neck, and shoot him again with his TASER in the neck.

13.     Timberlake knew that Gladney was in distress and that he was responding to a medical emergency when he tased Gladney. Timberlake "self-dispatched" to the scene and was not directed or requested to appear.

14.     Timberlake, another Fairfax County Police Officer, and at least one Fairfax County Emergency Medical Technician pile on Gladney when he collapses after Timberlake shoots him

with his TASER. Fairfax County police officers present when Timberlake fired his taser into Gladney violated Fairfax County Police Department General Order 540.3 when they failed to intercede to end and prevent Timberlake's further use of force that was clearly excessive and beyond that which is objectively reasonable under the circumstances. In fact, at least one Fairfax County police officer participated in and facilitated Officer Timberlake's subsequent tasing and infliction of unnecessary, gratuitous, and excessive force on Gladney by holding Gladney down while Timberlake tased him in the neck and struck him in the head with his TASER.

15.     The probes from Timberlake's TASER weapon made full contact with Gladney resulting in numerous "encrusted lesions" on Gladney's right shoulder and neck.

16.     Timberlake pumped a potentially deadly amount of voltage into Gladney's body knowing that he was responding to a medical emergency and that Gladney was experiencing an episode of apparent delirium, was incoherent, distressed, and reportedly having difficulty breathing.

17.     Gladney screamed on several occasions that he could not breathe, was pleading for help, and cried out "I can't breathe" more than once.

18.     Gladney suffered serious physical injury caused by Timberlake's unlawful taser attack. Additionally, Gladney suffered and continues to suffer mental anguish, humiliation, and psychological pain.

19.     Throughout this horrific episode, no officers from Fairfax County attempted to halt the unconstitutional mistreatment of Gladney.

20.     The facts of this case and the police misconduct and constitutional violations are closely analogous to those in *Armstrong*.

21.     Defendants in this case had the benefit of the Fourth Circuit's pronouncements and they tased an unarmed, emotionally distressed, unthreatening, and outnumbered man anyway.

22.     As the Fourth Circuit had held, Defendant and the Fairfax County Police Department were "on notice."

23.     Like the victim in *Armstrong*, Gladney was unarmed, emotionally distressed, unthreatening, and outnumbered when Defendant Timberlake illegally deployed his taser weapon in violation of federal law.

24.     On June 5, 2020 Fairfax Police Officer Kyle M. Schaefer caused criminal charges to be brought against Lamonta Gladney for "knowingly attempting to intimidate or impede by threats or by force a law-enforcement officer lawfully engaged in the performance of his duties," a Class 1 misdemeanor (Va. Code §18.2-460), and drunk in public, a Class 4 misdemeanor. On June 12, 2020, the Fairfax Commonwealth Attorney's Office dismissed both charges.

25.     At a news conference on June 6, 2020 Fairfax County Police Chief Edwin C. Roessler, Jr., said that Timberlake deployed force in violation of the department's use of force policies and ignored "the sanctity of human life." "Our nation is righteously angry at the law enforcement profession, as am I," Roessler said, in a reference to protests against police brutality sparked by the death of George Floyd, a black man who died at the hands of Minneapolis police on May 25, 2020.

26.     At that same press conference Fairfax County Commonwealth Attorney Steve Descano, who was elected in 2019 on a criminal justice reform agenda, also seemingly referenced the George Floyd protests in a statement announcing that the Fairfax Commonwealth's Attorney's Office was charging Timberlake with three counts of assault and battery. Criminal charges against Timberlake are pending, with a three-day trial set in Fairfax Circuit Court for September 19, 2022.

27.     Had Defendant Timberlake followed the law and heeded the Fourth Circuit's dictates in *Armstrong*, Gladney would not have suffered physical and emotional injury and loss of his Constitutional rights.

28.     This is a case seeking damages from Officer Timberlake (the "Defendant") who was acting under the color of state law pursuant to 42 U.S.C. § 1983 when he needlessly disregarded the safety and welfare of Lamonta Gladney resulting in his serious injury.

29.     Lamonta Gladney suffered serious physical and emotional injury in violation of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

30.     The Defendant's deliberate indifference to the health, welfare and safety of Lamonta Gladney constitutes a serious deprivation of his constitutional rights.

31.     Though Defendant was aware that Lamonta Gladney had not committed any crime and was in need of medical and or psychiatric treatment, Defendant Timberlake instead unnecessarily and wantonly inflicted pain on Lamonta Gladney and knowingly and willingly disregarded an objectively intolerable risk of harm.

32.     The Defendant's misconduct, done under the color of state law, as described below, was recklessly and deliberately indifferent to the life, safety, bodily integrity, well-being, liberty and civil rights of Lamonta Gladney.

33.     Defendant Timberlake's callous disregard for an unarmed man by "tasing" him multiple times, hitting him in the head with the taser and slamming his knee in his back and neck violated his constitutional rights as clearly defined in *Armstrong* and constituted a deprivation of his substantive and procedural due process rights guaranteed by the Fourth and Fourteenth Amendments, and as remediable pursuant to 42 U.S.C. §1983.

34.     The Defendant's actions were so egregious as to shock the conscience and were committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Lamonta Gladney.

35.     Plaintiff seeks damages from the Defendant pursuant to 42 U.S.C. § 1983 for his disregard of Lamonta Gladney's health, welfare, and safety guaranteed by the United States Constitution.

36.     This is a civil rights action for money damages brought under 42 U.S.C. §§ 1983, 1985 the Fourth and Fourteenth Amendments to the United States Constitution against Defendant Timberlake in his individual and official capacities as a police officer, in unlawfully arresting, maliciously prosecuting, and using excessive, unreasonable, and deadly force against Lamonta Gladney.

37.     The actions and conduct of Timberlake are the result of deliberate indifference on the part of Defendant to the civil rights of citizens of Virginia, including Lamonta Gladney.

38.     Defendant Timberlake violated federal law, including the United States Constitution because he was on notice of a consensus of other cases involving hundreds of deaths caused in the United States of America by the unlawful, excessive, and gratuitous use of TASER weapons by police officers, particularly *Armstrong v. The Village of Pinehurst*.

39.     The instant action is brought against Defendant Timberlake for committing acts under color of law which deprived Lamonta Gladney of rights secured under the Constitution and laws of the United States and the laws of the Commonwealth of Virginia.

## STATEMENT OF JURISDICTION

40.     The Court has federal subject matter jurisdiction in this action pursuant to 28 U.S.C. §
1331 because Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 and arise under the laws of
the United States.

41.     Venue is proper in the Alexandria Division of the Eastern District of Virginia because
Plaintiff's claims arise primarily from unlawful conduct occurring in Fairfax County, Virginia.

## PARTIES

42.     Plaintiff, Lamonta Gladney, is an adult individual residing in Fairfax County, Virginia.

43.     Defendant Timberlake was at all times relevant to this complaint, duly appointed and
acting as an officer of the Fairfax County Police Department acting under the color of law and
under the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth
of Virginia and the Fairfax County Police Department.

44.     Plaintiff brings suit against Defendant Timberlake in his individual and official
capacities.

45.     At all times relevant hereto, Defendant Timberlake was acting within the course and
scope of his employment with the Fairfax County Police Department.

46.     At all times relevant hereto, the unconstitutional acts of Defendant Timberlake were the
result of the policies, practices, inadequate training, unfamiliarity with current civil rights laws
affecting the Commonwealth of Virginia and/or procedures of the Fairfax County Police
Department.

47.     Fairfax County Police Department's policies, practices, and customs include training in
the use of force, on-the-street encounters with civilians, interactions with mentally disturbed

citizens, TASER training, TASER re-certification, firearm training, community policing,

defensive tactics, drug enforcement, officer survival, and medical training.

48.    Fairfax County Police Department created, implemented, drafted, revised, ratified and/or

approved these policies, procedures, practices, and protocols include written directives.

## THE FACTS

49.    TASER weapons have been responsible for hundreds of deaths when used by law

enforcement.

50.    Defendant Timberlake knew or should have known that TASER weapons have the

unique potential to be excessively used against citizens during the course of law enforcement

activities.

51.    TASER weapons can administer an uninterrupted shock of 50,000 volts.

52.    TASER weapons are designed to override the subject's central nervous system, causing

uncontrollable muscle contraction of muscle tissue and instant collapse.

53.    TASER weapons are known to cause serious injury and/or death.

54.    Individuals that are under the influence of alcohol or drugs, exhausted, and/or

overexerted are more likely to suffer serious injury and/or death when shot by a TASER weapon.

On June 5, 2020 Officer Schaefer charged Lamonta Gladney with public intoxication.

55.    Application of TASER weapons can result in serious injury and death, including cardiac

arrest, ventricular fibrillation, and a decrease in respiration.

56.    Prior to June 5, 2020, Defendant knew or should have known about the risk of serious

harm or death caused by the use of TASER weapons.

57.    In fact, on January 11, 2016, in *Armstrong v. The Village of Pinehurst,* the United States

Court of Appeals for the Fourth Circuit provided the framework on how law enforcement

officers must treat an unarmed, mentally or psychologically disturbed citizen who has committed

no crime.

58.     The Fourth Circuit address the question of the use of force on the mentally ill:

> Mental illness, of course, describes a broad spectrum of conditions and does not dictate the same police response in all situations. But "in some circumstances at least," it means that "increasing the use of force may . . . exacerbate the situation." *Deorle* [*v. Rutherford*,] 272 F.3d at 1283. Accordingly, "the use of officers and others trained in the art of counseling is ordinarily advisable, where feasible, and may provide the best means of ending a crisis." *Id.* And even when this ideal course is not feasible, officers who encounter an unarmed and minimally threatening individual who is "exhibit[ing] conspicuous signs that he [i]s mentally unstable" must "de-escalate the situation and adjust the application of force downward."

(citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013)).

59.     The Fourth Circuit based its findings on a similar decision from the United States Court

of Appeals for the Ninth Circuit and determined:

> "[T]he use of force that may be justified by" the government's interest in seizing a mentally ill person, therefore, "differs both in degree and in kind from the use of force that would be justified against a person who has committed a crime or who poses a threat to the community."

(citing *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010) (alteration omitted) (quoting

*Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001)).

60.     The Fourth Circuit promulgated the following finding:

> Where a seizure's sole justification is preventing harm to the subject of the seizure, the government has little interest in using force to effect that seizure. Rather, using force likely to harm the subject is manifestly contrary to the government's interest in initiating that seizure. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003) (When "a mentally disturbed individual not wanted for any crime . . . [i]s being taken into custody to prevent injury to himself[,] [d]irectly causing [that individual] grievous injury does not serve th[e officers'] objective in any respect.").

61.     In *Armstrong*, the Fourth Circuit described the victim and provided a clear warning to the

Defendant:

When Appellees decided to begin using force, Armstrong, who stood 5'11" tall and weighed 262 pounds, was stationary, seated, clinging to a post, and refusing to move. He was also outnumbered and surrounded by police officers and security guards. **The degree of force necessary to prevent an individual who is affirmatively refusing to move from fleeing is obviously quite limited.** (emphasis added).

62.     Like the victim in *Armstrong v. The Village of Pinehurst*, Lamonta Gladney was not attempting to evade the police and was completely outnumbered by the police.

63.     Gladney was unarmed and was not seeking to evade or flee from the police, and he posed no danger to the officers who outnumbered him.

64.     Under those circumstances, the Fourth Circuit instructs the Fairfax County Police Department and Defendant Officer Timberlake that, "The degree of force necessary to prevent an individual who is affirmatively refusing to move from fleeing is **obviously quite limited**."

65.     Despite knowing that Gladney was in psychological distress, and the clear limitations set forth by the Fourth Circuit prohibiting an escalation of force, Officer Timberlake fired his TASER into Gladney within seconds of arriving on the scene, causing Gladney to collapse, after which Timberlake strikes Gladney in the head with his TASER and puts both his knees on Gladney's back and neck while firing his TASER at least one more time into Gladney's neck. Gladney exerted, at most, only passive resistance to Officer Timberlake's violent attack.

66. Timberlake, another Fairfax County police officer, and at least one Fairfax County Emergency Medical Technician pile on Gladney when he collapses after Timberlake shoots him with his TASER. The other Fairfax County police officer who was present during Timberlake's attack on Gladney participated in and facilitated Officer Timberlake's subsequent tasing and infliction of unnecessary, gratuitous, and excessive force on Gladney by holding Gladney down while Timberlake tased him in the neck and struck him in the head with his TASER.

67.     As set forth in *Armstrong v. The Village of Pinehurst*, the "sole justification" of the Defendant's seizure of Lamonta Gladney was "preventing harm" to Lamonta Gladney.

68.     In violation of the Fourth Circuit's dictates the Defendant Officer Timberlake failed to "de-escalate the situation and adjust the application of force downward."

69.     As set forth in *Armstrong v. The Village of Pinehurst*, the Fourth Circuit has warned that "the government has little interest in using force to effect that seizure. Rather, using force likely to harm the subject is manifestly contrary to the government's interest in initiating that seizure."

70.     It was well established in June 2020, that a taser may not be deployed "in the face of stationary and non-violent resistance to being handcuffed."

71.     Lamonta Gladney was unarmed, nonviolent, non-threatening, and had conversed peacefully with a Fairfax County police officer and Fairfax County emergency medical technicians immediately before Timberlake shot him with his TASER.

72.     As a result, no credible, truthful or honest police officer could claim to have been physically threatened by Lamonta Gladney.

73.     Officer Timberlake set into motion events and actions which lead to the serious injury of Lamonta Gladney.

74.     Lamonta Gladney had not committed any crime and was not engaged in any criminal conduct at the time Officer Timberlake shot him repeatedly with his TASER and struck him in the side of the head.

75.     Defendant Officer Timberlake's actions are unequivocally unconstitutional.

76.     Through his refusal to stop the unconstitutional mistreatment of Lamonta Gladney and his active facilitation of Officer Timberlake's tasing of Lamonta Gladney by assisting in pinning Gladney to the ground as Timberlake tased Gladney and struck him in the head, the other Fairfax

County police officer present during Timberlake's tasing of and attack on Gladney acted in tacit agreement to violate Lamonta Gladney's rights.

77.     Defendant Officer Timberlake, under the guise of conducting legitimate police activity on behalf of Fairfax County, and in violation of the Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst*, and without ever having observed Lamonta Gladney with a weapon, tased him on more than one occasion, slammed his knees into Gladney's back and neck, and struck him in the head, causing serious physical and psychological injury to Gladney.

78.     Defendant's use of force was unlawful and unwarranted because Lamonta Gladney was not fleeing from the commission of any crime or attempting to evade a lawful arrest.

79.     As a result of Defendant's unlawful and unconstitutional acts and/or omissions, Lamonta Gladney suffered serious physical and psychological injuries.

80.     Fairfax County and the Fairfax County Police Department knew or should have known, that its police officers did not follow the law, refused to follow the Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst,* and violate the civil rights of persons with improper, gratuitous and excessive use of TASER weapons.

81.     Fairfax County and the Fairfax County Police Department have failed to take adequate steps to have its police officers appropriately trained and supervised, including to be knowledgeable of the significance, implications and requirements of Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst*.

82.     At all times relevant hereto, Officer Timberlake was acting under color of law and within the scope of his employment as a duly appointed law enforcement officer of Fairfax County and the Fairfax County Police Department.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §§ 1983, 1985
## AND THE FOURTH AND FOURTEENTH AMENDMENTS
## OF THE UNITED STATES CONSTITUTION

83.     Plaintiff incorporates by reference each and every allegation set forth above.

84.     For the reasons set forth herein, Plaintiff alleges that Defendant Timberlake, intentionally, willfully, recklessly, and/or otherwise deprived Lamonta Gladney of his civil rights in violation of 42 U.S.C. §§ 1983, 1985 and the United States Constitution.

85.     The unconstitutional actions of Defendant include, but are not limited to, the use of excessive and/or unreasonable force, the deprivation of medical care, and the deprivation of Lamonta Gladney's physical liberty.

86.     Defendant and other Fairfax County police officers who were present on June 5, 2020 knew or should have known that Officer Timberlake's violent mistreatment of Lamonta Gladney violated the dictates in *Armstrong v. The Village of Pinehurst;* however, none of the officers involved halted the unconstitutional behavior and excessive force.

87.     The officers involved, including Defendant Timberlake, agreed to this unconstitutional mistreatment of Lamonta Gladney when *Armstrong v. The Village of Pinehurst* required them to come to his aid to prevent the gratuitous tasings.

88.     Defendant's unreasonable seizure of Lamonta Gladney with the use of a deadly taser weapon occurred without affording him due process of law.

89.     As a direct result of the unlawful and unreasonable constitutional violations committed by Defendant, Lamonta Gladney suffered serious physical and emotional injuries and was deprived of his civil liberties.

        **WHEREFORE**, Plaintiff demands judgment against Defendant in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT II
## EXCESSIVE FORCE/POLICE BRUTALITY

90.     Plaintiff incorporates by reference each and every allegation set forth above.

91.     At all times relevant hereto, Defendant had an obligation to employ only reasonable measures in his interaction and treatment of Lamonta Gladney.

92.     Notwithstanding the obligations, Defendant used excessive, unreasonable, and lethal force on Plaintiff Lamonta Gladney.

93.     It is believed, and, therefore, averred that the use of force was not warranted or authorized under the circumstances.

94.     As a direct substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendant, Plaintiff Lamonta Gladney suffered serious physical and psychological injuries.

95.     As a direct substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendant, Lamonta Gladney was deprived of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

        **WHEREFORE**, Plaintiff demands judgment against Defendant in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT III
## FALSE ARREST

96.     Plaintiff incorporates by reference each and every allegation set forth above.

97.     Defendant seized Plaintiff without a warrant and without probable cause.

98.     The actions of Defendant constitute an unreasonable seizure prohibited by the Fourth Amendment.

99.     Defendant was not permitted to violate Lamonta Gladney's constitutional rights.

100.    Defendant violated Lamonta Gladney's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution by unlawfully depriving him of his physical liberty.

101.    As a direct, substantial, and proximate result of the intentional, reckless, willful and malicious conduct of Defendant, Lamonta Gladney was deprived of his physical liberty in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

102.    As a direct, substantial, and proximate cause of the aforementioned constitutional violations, Lamonta Gladney suffered serious physical and psychological injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

1.    This Court grant Plaintiff compensatory damages according to proof.

2.    This Court grant Plaintiff nominal damages.

3.    This Court grant Plaintiff punitive damages.

4.    This Court award Plaintiff attorney's fees, costs, and expenses related to this action.

5.    This Court grant injunctive relief to correct government procedure to prevent future injury.

6.    This Court award Plaintiff all such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted,

/s/ Thomas F. Hennessy

**THE HENNESSY LAW FIRM, PLLC**
Thomas F. Hennessy
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
thennessy@virginiawage.net
Telephone: (703) 865-8836
Facsimile: (703) 865-7633