IN THE UNITED STATES DISTRICT COURT IN THE
EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION

| | |
|---|---|
| LAMONTA GLADNEY, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| TYLER RYAN TIMBERLAKE | ) |
| | )   Case No.: 1:21-cv-00287-AJT-JFA |
| and | ) |
| | ) |
| KYLE M. SCHAEFER, | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S MOTION TO LIFT PARTIAL STAY OF DISCOVERY**

COMES NOW Plaintiff, Lamonta Gladney ("Gladney"), by counsel, and respectfully submits his Motion to Lift the Partial Stay of Discovery imposed by this Court in its June 2, 2021, Order [Doc. No. 18] staying direct discovery against Defendant Tyler Ryan Timberlake ("Timberlake") based on Timberlake's alleged Fifth Amendment concerns arising out of pending misdemeanor charges against him that parallel this civil action and that are set for trial in Fairfax Circuit Court over one year from now on *September 19, 2022*. That Order provides, in pertinent part, that "upon substantial completion of all discovery authorized herein, the Court will consider, upon application of the Plaintiff, whether Plaintiff may proceed to obtain further discovery from Defendant Timberlake, including [Timberlake's] deposition…." Plaintiff has completed extensive and substantial discovery, obtaining the voluminous documentary and video compilation of the extensive criminal investigation of the June 5, 2020, incident conducted by the Fairfax County Police Department, and now seeks to lift the stay of direct discovery against Timberlake for the reasons set forth herein.

1

## I. SUMMARY OF ARGUMENT

"When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay. A stay must not be 'immoderate.'" *Trujillo v. Conover & Company Communications, Inc.*, 221 F. 3d 1262, 1264 (11th Cir. 2000), *citing CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir.1982). In considering whether a stay is "immoderate," the district court should examine both the scope of the stay (including its potential duration) and the reasons for the stay. *Id.* As the Supreme Court has explained, "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936).

If the stay ordered by this Court were to remain in effect until the conclusion of the trial currently set for September 19, 2022, and the exhaustion of all appeals it would be immoderate and, therefore, an abuse of discretion. If not lifted the scope of the stay ordered by this Court would be, in effect, indefinite because the record indicates that the misdemeanor prosecution of Defendant Timberlake has already been continued or delayed several times and is not progressing quickly. *Cf. American Manuf. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524 (11th Cir.1984) (finding stay of federal court proceedings pending conclusion of state court proceedings indefinite where state proceedings had been pending for 18 months and no trial date had been set in state court); *CTI-Container*, 685 F.2d at 1288 (vacating district court stay where duration of stay could "safely be described as an indefinite period").

Moreover, Timberlake's invocation of his Fifth Amendment right against self-incrimination is disingenuous because he has represented through his criminal defense attorney

that he intends to assert as his principal defense to the misdemeanor charges his alleged "mistake of fact" in believing that Plaintiff was a man named Anthony Ingram, who Timberlake claims to have known had outstanding felony warrants. The only way Timberlake can assert this defense in his criminal case is to testify about his alleged "mistake of fact," thereby waiving his Fifth Amendment privilege.

## II. FACTUAL BACKGROUND

On June 5, 2020, Fairfax County paramedics were dispatched to the area of Fordson Road in Fairfax, Virginia concerning a man asking for oxygen. Finding Plaintiff Lamonta Gladney to be disoriented and nonresponsive, the paramedics requested police backup and Fairfax County Police Officer Kyle Schaeffer responded. Officer Schaeffer did not know Plaintiff Gladney but engaged peacefully with him for approximately five minutes, obtaining from Gladney his first name "Lamonta." Officer Schaeffer and paramedics at the scene calmly sought to persuade Gladney to accompany the paramedics to the hospital, and came close to doing so, but Plaintiff Gladney walked slowly away from the ambulance rather than get in. Officer Schaeffer put out a call stating merely that he was engaged with a person walking in circles and acting erratically. Officer Schaeffer did not indicate that he was in any danger, nor did he request immediate backup. Fairfax County Police Officer Timberlake heard the call and self-dispatched to the scene. Officer Timberlake did not seek direction from dispatch, nor did he seek to contact the other officer on the scene. Timberlake parked his cruiser and immediately pulled out his taser as he was walking toward Gladney, firing his taser into Gladney less than 10 seconds after exiting his cruiser. Officer Timberlake gave Gladney no opportunity to respond or comply to any instruction before firing his taser into Gladney, causing Gladney to cry out in pain and collapse on the asphalt. While on the asphalt Timberlake punched Gladney in the face with

the butt of his taser and shocked him directly and repeatedly with the taser, causing serious physical and emotional injury to Gladney. Officer Schaffer assisted Timberlake in restraining the helpless Lamonta Gladney as Timberlake punched and tased him.

At no time did Lamonta Gladney threaten anyone or make any aggressive gestures. Officer Timberlake made absolutely no effort to consult with Officer Schaeffer or the paramedics on the scene to assess the situation or ascertain Gladney's identity prior to exiting his cruiser and almost immediately tasing a person asking for help. In fact, when Officer Timberlake fired his taser into Gladney, Gladney was turned away from Timberlake.

On June 5, 2020, Fairfax Police Officer Kyle M. Schaefer, now a defendant in this case, caused criminal charges to be brought against Lamonta Gladney for "knowingly attempting to intimidate or impede by threats or by force a law-enforcement officer lawfully engaged in the performance of his duties," a Class 1 misdemeanor (Va. Code §18.2-460), and drunk in public, a Class 4 misdemeanor. On June 11, 2020, Kyle Manikas, Deputy Commonwealth's Attorney for Fairfax County, filed the Commonwealth's Motion to Dismiss both charges against Gladney, asserting that "[t]he Commonwealth reviewed the body worn camara footage of the incident and the evidence is insufficient to support either charge." On June 12, 2020, the Fairfax Commonwealth Attorney's Office dismissed both charges.

Since entry of this Court's June 2, 2021, Order [Doc. No. 18] staying direct discovery against Defendant Timberlake, Plaintiff Gladney has vigorously pursued discovery, propounding Interrogatories, Requests for Production of Documents, and third-party subpoenas, to which voluminous responses have been received. Plaintiff has scheduled two depositions to be taken on August 26. 2021.
.

### III. PROCEDURAL HISTORY OF OFFICER TIMBERLAKE'S CRIMINAL PROSECUTION

1. On June 6, 2020, Timberlake was arrested and charged with three counts of misdemeanor assault and battery (violation of Va. Code §18.2-57).

2. On June 9, 2020, the matters were continued in the Fairfax General District Court.

3. On July 13, 2020, the Commonwealth moved to nolle prosequi the charges against Officer Timberlake. The good cause provided for the nolle prosequi was that the Commonwealth did not want to expose witnesses to potential infection by the COVID-19 virus, but the Commonwealth also represented that it wanted the case against Timberlake tried before a jury.

4. Over the defense's objection, the Honorable Susan J. Stoney granted the Commonwealth's motion.

5. On July 20, 2020, the Commonwealth direct indicted Officer Timberlake on 3 counts of assault and battery.

6. On July 23, 2020, a jury trial was set for January 11, 2021, in the Fairfax Circuit Court.

7. Pursuant to Fairfax County Circuit Court COVID-19 restrictions implemented on September 17, 2020, Timberlake's criminal case was removed from the trial docket and set for status on January 14, 2021.

8. The Fairfax Circuit Court subsequently removed the January 14, 2021, status hearing from the docket and continued the matter to February 26, 2021, for a status hearing.

9. On February 26, 2021, the Fairfax Circuit Court ordered that Timberlake's criminal trial be set on **September 19, 2022**, a continuance of more than 18 months**.** Neither party objected to that trial date, nor has the Court ordered that there shall be no further continuances.

10. In his first Motion to Dismiss filed in the Fairfax Circuit Court Brandon R. Shapiro, Esq., Timberlake's criminal defense attorney, asserts that the individual Timberlake believed he was tasing on June 4, 2020, a man named Anthony Ingram, had outstanding warrants for his arrest. This argument is characterized by the Commonwealth as a "mistake of fact" defense. See Exhibit "A," Commonwealth's Response to Motion to Dismiss, at pg. 8 ("[D]efense counsel has now, through a motion, disclosed that the defendant will pursue a mistake of fact defense."). Of course, the only way Timberlake could produce evidence of his "mistake of fact" would be to testify in his criminal trial concerning his mistaken perception, thereby waiving his Fifth Amendment privilege.

11. On June 11, 2021. Timberlake filed a second Motion to Dismiss, a copy of which is attached hereto as Exhibit "B," in which he states that "[f]rom the initial arrest of Officer Timberlake, the defense has made it known that Officer Timberlake believed he was arresting Anthony Ingram." See Exhibit "B" Notice and Motion to Dismiss, at pg. 12. Timberlake's criminal defense counsel reiterates in his second Motion to Dismiss that "[a]t the time Officer Timberlake arrested Lamonta Gladney, Officer Timberlake believed he was arresting Anthony Ingram, and that Anthony Ingram had two outstanding warrants for his arrest." *Id.* at 14. Timberlake's assertion as to his subjective misidentification of Gladney is demonstrably false and not a valid defense because, even if genuinely believed by Timberlake (it was not), was unreasonable. *See, e.g., Peterson v. City of Pine River & Pine River Police S Nathan Gainey & Chelsea Collette*, 36 F.Supp.3d 843, 849 (D. Minn. 2014) ("It was thus clearly established at the time of the Plaintiff's arrest that the Fourth Amendment afforded her the right to be free from an arrest due to an officer's unreasonable mistake of fact regarding her identity."). Regardless of the lack of any factual or legal merit to Timberlake's "mistake of fact" defense, however,

Timberlake clearly intends to give testimony at his criminal trial as to his alleged misidentification of Gladney, thereby waiving his Fifth Amendment privilege. His argument in favor of a continuation of stay of discovery as to him in this case -- that it is necessary because he should not be burdened with the choice of either waiver of his Fifth Amendment privilege or an adverse jury instruction if he refuses to testify -- is therefore disingenuous.

12. On July 2, 2021, the Fairfax Circuit Court denied Timberlake's second Motion to Dismiss, and his misdemeanor prosecution is still set for trial on *September 19, 2022*. There is no apparent prospect that Timberlake's misdemeanor jury trial will be set for any earlier date.

### IV. ARGUMENT

**A. The extraordinary remedy of continuation of the stay of discovery as to Timberlake is immoderate given a misdemeanor trial date set over one year from now.**

Gladney's motion to lift partial stay of discovery is analyzed using the same factors and balancing test identified by the parties in their memoranda filed in support and opposition to Timberlake's motion to stay discovery [Doc. Nos. 7, 12] and applied in this Court's Order. [Doc. No. 18]. The facts have, however, materially changed because Timberlake's misdemeanor jury trial has not been moved up from the September 19, 2022, trial date, and discovery in this case has been substantially completed.

"'[A] stay of [a] civil case' to permit conclusion of a related criminal prosecution has been characterized as 'an extraordinary remedy.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F. 3d 83, 98 (2d Cir. 2012) (*quoting Tr. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). Further, the Constitution does not require such a stay, and "[t]he existence of a civil defendant's Fifth Amendment right arising out of a related criminal proceeding thus does not strip the court in the civil action of its broad discretion to manage its docket." *Louis Vuitton*, 676 F.3d at 98-99.

Plaintiff "ha[s] a legitimate interest in the expeditious resolution of [his] case." *Tr. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ; *Chagolla v. City of Chicago*, 529 F.Supp.2d 941, 947 (N.D. Ill. 2008) ; *Fid. Nat'l Title Ins. Co. of New York*, 980 F. Supp. 1022, 1024 (D. Minn. 1997). Continuation of the stay of discovery as to Timberlake until the conclusion of his state criminal prosecution would have no defined end point in time. Plaintiff anticipates that Defendant Timberlake will ask that the stay remain in place until a specific triggering event: Timberlake's charges are dismissed; he is found not guilty; or he is sentenced following a guilty plea or a guilty verdict. While these are common conclusions to criminal prosecutions, this argument would fail to account for other outcomes, such as mistrials or hung juries, as well as direct appeal and possible postconviction petitions. Put another way, the timeline of a criminal prosecution is difficult to predict, and delays are a distinct possibility. The uncertain timeline of the requested stay hinders Plaintiff's interest in moving this lawsuit forward.

Plaintiff has significant interests in seeing this matter proceed. Delay may increase the risk that memories will fade, and relevant evidence will be lost. *See Clinton v. Jones*, 520 U.S. 681, 707-708, 117 S. Ct. 1636 1651, 137 L.Ed.2d 945 (1997) ("The complaint was filed within the statutory limitations period—albeit near the end of that period—and delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party").

In addition, the Court's interest in clearing its docket favors lifting the stay. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989). Moreover, "[i]t is axiomatic that the public's interest favors open judicial proceedings and the expeditious resolution of

litigation." *Waitt v. Internet Brands, Inc*., No. CV-10-3006 GHK (JCGx), 2011 WL 13214299 at * 8 (C.D. Cal. 2011).

Another important factor is the status of the cases. Because staying a civil case pending resolution of a criminal matter is such an "extraordinary remedy," courts ordinarily enter a stay only "when related criminal proceedings are imminent or pending." *Louis Vuitton*, 676 F.3d at 98. Here, Timberlake's criminal case is scheduled for a jury trial to commence *over one year from now* on September 19, 2022. As the Supreme Court has explained, "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis v. North American Co.,* 299 U.S. 248, 57 S. Ct. 163, 167, 81 L. Ed. 153 (1936).

**B. Timberlake will suffer no adverse consequences if this Court lifts the stay because he is asserting a defense in his criminal prosecution which will require that he testify and thereby waive his Fifth Amendment privilege.**

A factor for this Court's consideration of Gladney's motion to lift stay addresses the consequences Timberlake may suffer if this Court grants Gladney's motion. As previously argued herein, Timberlake clearly intends to give testimony at his criminal trial as to his alleged misidentification of Gladney, thereby waiving his Fifth Amendment privilege. Accordingly, he will suffer no prejudice if this Court grants Gladney's motion to lift the stay. .

### V.  CONCLUSION

A persistent stay of discovery as to Defendant Timberlake is tantamount, at this stage, to an extreme stay of the entire case - already rejected by this Court. Under both the doctrine of the law of the case and under practical grounds, this Court's prior rejection of a stay of proceedings generally should guide the Court to lift its stay of discovery against Defendant Timberlake.

For all the forgoing reasons Plaintiff Gladney respectfully requests that this Court lift the stay of discovery as to Defendant Timberlake.

Respectfully submitted,

/s/ Thomas F. Hennessy
**THE HENNESSY LAW FIRM, PLLC**
Thomas F. Hennessy
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
thennessy@virginiawage.net
Telephone: (703) 865-8836
Facsimile: (703) 865-7633

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2021, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following.

Julia B. Judkins, VSB No. 22597
Heather K. Bardot, VSB No. 37269
Dawn E. Boyce, VSB No. 32923
**BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.**
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
T: 703-385-1000
F: 703-385-1555
jjudkins@bmhjlaw.com
hbardot@bmhjlaw.com
dboyce@bmhjlaw.com
*Counsel for Defendant Timberlake*

Kimberly Pace Baucom      kimberly.baucom@fairfaxcounty.gov
*Counsel for Defendant Kyle M. Schaefer*

Theodore Bruce Godfrey     godfrey@jezicfirm.com
*Counsel for Plaintiff Lamonta Gladney*

_____/s/_____
Thomas F. Hennessy, VSB No. 32850
**THE HENNESSY LAW FIRM, PLLC**